**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| USEC INC., | : | Case No. 14-10475 (_____) |
| | : | |
| Debtor.[1] | : | Hearing Date: _____, 2014 at _____ _.m. (ET) |
| | : | Objection Deadline: ____, 2014 at 4:00 p.m. (ET) |

---------------------------------------------------------- x

**MOTION OF DEBTOR FOR ORDER (I) APPROVING DISCLOSURE STATEMENT,
(II) DETERMINING DATES, PROCEDURES AND FORMS APPLICABLE TO
SOLICITATION PROCESS, (III) ESTABLISHING VOTE TABULATION
PROCEDURES, (IV) ESTABLISHING OBJECTION DEADLINE AND SCHEDULING
HEARING TO CONSIDER CONFIRMATION OF PLAN AND (V) SETTING SPECIAL
BAR DATE FOR CERTAIN SECURITIES-RELATED CLAIMS TO BE
<u>IMPLEMENTED THROUGH PLAN NOTICING PROCESS</u>**

USEC Inc., the debtor and debtor in possession in the above-captioned case (the

"Debtor"), hereby moves (the "Motion") for entry of an order pursuant to Sections 105(a), 501,

502, 1123, 1125, 1126 and 1128 of Title 11 of the United States Code (the "Bankruptcy Code"),

Rules 2002, 3003(c)(3), 3017, 3018, 3020 and 9006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rules 2002-1(e) and 3017-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), (i) approving the proposed disclosure statement, (ii) approving the

dates, procedures and forms applicable to the solicitation and plan noticing process, (iii)

approving certain vote tabulation procedures, (iv) establishing the deadline for filing objections

to the plan and scheduling the hearing to consider confirmation of the plan, and (v) setting a

special bar date for certain securities-related claims to be implemented through the disclosure

statement and the plan noticing process, all as more particularly described below.  In support of

the Motion, the Debtor, by and through its undersigned counsel, respectfully represents:

---

[1]      The Debtor's federal tax identification number is 52-2107911.  The Debtor's mailing address is 6903
Rockledge Drive, Suite 400, Bethesda, Maryland 20817.

# JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Notwithstanding the foregoing, the Debtor consents to the entry of an order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such order absent the consent of the parties.  Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105, 501, 502, 1123, 1125, 1126 and 1128, Bankruptcy Rules 2002, 3003(c)(3), 3017, 3018, 3020 and 9006, and Local Rules 2002-1(e) and 3017-1.

# BACKGROUND

## I.   THE CHAPTER 11 CASE

2.      On March 5, 2014 (the "Petition Date"), the Debtor filed a voluntary petition in this Court commencing a case for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

3.      The factual background regarding the Debtor, including its business operations, its capital and debt structure and the events leading to the filing of the Chapter 11 Case, is set forth in detail in the Declaration of John R. Castellano, Chief Restructuring Officer of USEC Inc., in Support of Chapter 11 Petition and First Day Pleadings, filed on the Petition Date.

4.      The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108.  No trustee or examiner has been requested in the Chapter 11 Case and no committee has yet been appointed.

5.      The Chapter 11 Case is a "prearranged" case commenced for the purpose of implementing an agreed restructuring of the Debtor's convertible note debt and preferred

stock interests.  A plan of reorganization (the "Plan") reflecting the agreed restructuring has been filed, along with a disclosure statement (the "Disclosure Statement").[2]  The Debtor seeks to obtain approval of the Disclosure Statement, authorization to solicit votes from the holders of impaired claims and interests, and then thereafter obtain confirmation of the Plan as quickly as the Court's schedule and requisite notice periods will permit.

## II.  THE PROPOSED PLAN OF REORGANIZATION

6.    The Plan proposes, and its terms embody, a prearranged restructuring of the Debtor's obligations under (a) its 3.0% convertible senior unsecured notes due 2014 (the "Old Notes"), referred to under the Plan as the Noteholder Claims in Class 5, and (b) its preferred stock, referred to under the Plan as the Preferred Stock Interests/Claims in Class 6.[3] Specifically, the Plan provides that, on the Effective Date, each holder of an Allowed Noteholder Claim will receive its pro rata share of (i) 79.04% of the New Common Stock issued under the Plan (subject to dilution on account of New Common Stock issued pursuant to the New Management Incentive Plan), (ii) Cash equal to the amount of the interest accrued on the Old Notes from the date of the last interest payment made by the Debtor before the Petition Date to the Effective Date and (iii) New Notes to be issued under the Plan in the aggregate principal amount of $200 million.  The Plan provides, in turn, that the holders of Allowed Preferred Stock Interests/Claims will receive (i) 15.96% of the New Common Stock issued under the Plan (subject to dilution on account of New Common Stock issued pursuant to the New Management Incentive Plan) and (ii) New Notes to be issued under the Plan in the aggregate principal amount of $40.38 million.

---

[2]        Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[3]        The USEC Preferred Stock that underlies the Preferred Stock Interests/Claims is held by only two entities: (a) The Babcock & Wilcox Investment Company and (b) Toshiba America Nuclear Energy Corporation.

7.    The Plan further provides that, if Classes 5 and 6 vote to accept the Plan, the holders of Allowed Common Stock Interests/Claims in Class 7 will receive a pro rata share of 5% of the New Common Stock issued under the Plan (subject to dilution on account of New Common Stock issued pursuant to the New Management Incentive Plan).  Additionally, the Plan provides that Unexercised Common Stock Rights will be cancelled and the holders of any such Interests (which Interests are classified in Class 8 of the Plan) will not receive or retain any property under the Plan.  The remaining four Classes of Claims – Other Priority Claims in Class 1, Secured Claims in Class 2, General Unsecured Claims in Class 3 and Intercompany Claims in Class 4 – are not impaired by the Plan.

## III. VOTING RIGHTS UNDER PROPOSED PLAN

8.    Voting rights with respect to the Plan will flow from the classification of Claims and Interests and the Impaired or Unimpaired treatment of Claims and Interests within each Class as proposed in the Plan.  The treatment of Administrative Claims, DIP Facility Claims and Priority Tax Claims complies with the requirements of the Bankruptcy Code. Other Claims and Interests are classified, and are either Impaired or Unimpaired, as follows:

| Class | Designation | Impaired | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | No |
| 2 | Secured Claims | Unimpaired | No |
| 3 | General Unsecured Claims | Unimpaired | No |
| 4 | Intercompany Claims | Unimpaired | No |
| 5 | Noteholder Claims | Impaired | Yes |
| 6 | Preferred Stock Interests/Claims | Impaired | Yes |
| 7 | Common Stock Interests/Claims | Impaired | No |
| 8 | Unexercised Common Stock Rights | Impaired | No |

9.    As shown above, the Plan provides for eight (8) different classes of Claims and Interests.  Under the Plan, Class 5 Noteholder Claims and Class 6 Preferred Stock

Interests/Claims (the "Voting Classes") are Impaired and votes on the Plan will be solicited from the holders of Claims and Interests in such Classes.  Claims in Classes 1, 2, 3 and 4 (collectively, the "Unimpaired Classes") are Unimpaired under the Plan.  The holders of Claims in such Classes are conclusively presumed to have accepted the Plan and, therefore, will not have their votes solicited.  Claims and Interests in Classes 7 and 8, as applicable (collectively, the "Impaired Rejecting Classes") are Impaired under the Plan.  Although the holders of Allowed Claims and Interests in one of the Impaired Rejecting Classes (i.e., Class 7) will receive a distribution of a certain amount of New Common Stock under the Plan if Classes 5 and 6 vote to accept the Plan, the holders of such Allowed Claims and Interests, as well as the holders of Unexercised Common Stock Rights in Class 8 (which Class will not receive <u>any</u> distribution), are deemed to have rejected the Plan and will not have their votes solicited.

## RELIEF REQUESTED

10.    By this Motion, the Debtor requests, among other things, that the Court enter the Order (a) approving the Disclosure Statement;[4] (b) approving the dates, procedures and forms applicable to the solicitation and noticing process, including (i) confirming the authority of the voting agent, establishing a voting record date, and setting a voting deadline, (ii) approving the forms of ballots to be used by Classes 5 and 6, (iii) approving the materials and rules applicable to voting by holders of Claims and Interests in Classes 5 and 6, and (iv)

---

[4]    Contemporaneous with the filing of this Motion, the Debtor has filed the Motion of Debtor for Order (I) Approving Combined Notice of Commencement of Case, Initial Meeting of Creditors and Disclosure Statement Hearing and  (II) Setting Date of Disclosure Statement Hearing and Establishing Deadline and Procedures for Objecting to Disclosure Statement.  The Debtor has, pursuant to such motion, asked the Court to (a) approve a combined notice of the commencement of the Chapter 11 Case (the "Combined Notice"), the initial meeting of creditors and other preliminary matters, along with notice of the hearing to consider the adequacy of the Disclosure Statement and (b) set the date for the Disclosure Statement hearing and establish a deadline and procedures for objecting to the Disclosure Statement (the "Combined Notice Motion").  Accordingly, at the time this Motion is heard, the Debtor believes that the proposed order with respect to the Combined Notice Motion will have been entered by the Bankruptcy Court and the Combined Notice will have been issued.  Parties in interest should consult such order or the Combined Notice to obtain information with respect to, among other things, the date and time of the hearing to consider the adequacy of the Disclosure Statement and the deadline and procedures for objecting to the Disclosure Statement.

approving the notice procedures applicable to holders of Claims that are not Impaired by the Plan and holders of Claims and Interests who are deemed to reject the Plan; (c) approving certain vote tabulation procedures; (d) establishing the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan; and (e) setting a special bar date for certain securities-related claims to be implemented through the terms of the Disclosure Statement and certain of the notices described above.

## DESCRIPTION OF RELIEF REQUESTED

### I.    APPROVAL OF DISCLOSURE STATEMENT

11.    Bankruptcy Code Section 1125 requires a bankruptcy court to approve a written disclosure statement prior to allowing a debtor to solicit acceptances for a chapter 11 plan.  See 11 U.S.C. § 1125(b).  To approve a disclosure statement, a court must find that the disclosure statement contains "adequate information," which is defined as "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests . . . to make an informed judgment about the plan."  11 U.S.C. § 1125(a)(1).

12.    The Disclosure Statement includes, among other things, an introduction to the Chapter 11 Case, the Debtor's situation, and the Plan; general information concerning the Debtor's history, operations and financial condition; an overview of events occurring in the Chapter 11 Case; a description of the material terms of the Plan; a discussion of applicable securities laws; a discussion of the tax consequences of the Plan; a discussion of risk factors associated with the Debtor's situation, the Plan and operations after emergence from Chapter 11; a description of voting, confirmation and consummation requirements; and a description of alternatives to the Plan.

13.    Based upon the foregoing, the Debtor believes that the Disclosure Statement contains "adequate information" as that phrase is defined in Bankruptcy Code Section 1125(a)(1).  Accordingly, the Debtor believes that the Disclosure Statement should be approved.

## II.    APPROVAL OF DATES, PROCEDURES AND FORMS APPLICABLE TO SOLICITATION AND NOTICING PROCESS

A.      Noticing and Voting Agent

14.    The Debtor has filed applications seeking the Court's approval to retain Logan & Company, Inc. to serve as the noticing agent (the "Noticing Agent") and the administrative advisor ("Administrative Advisor") in the Chapter 11 Case.  The Debtor proposes to utilize Logan & Company, Inc., in its capacity as Noticing Agent, as the Debtor's solicitation and plan noticing agent to assist the Debtor in mailing solicitation packages and notices, and in its capacity as Administrative Advisor, to receive and tabulate ballots cast on the Plan, and certifying to the Court the results of the balloting (for these purposes hereafter, the "Voting Agent").

B.      Voting Record Date

15.    Bankruptcy Rule 3018(a) provides that, for cause, a court may set a record date, other than the date of entry of the disclosure statement approval order, to determine which holders of claims against, or interests in, a debtor may vote to accept or reject a plan of reorganization.  The Debtor requests that the Court establish the business day immediately prior to the day of the scheduled hearing to consider approval of the Disclosure Statement as the record date (the "Voting Record Date") for determining the holders of claims and interests that are entitled to vote and, therefore, receive solicitation packages and/or notices, as more particularly described below.

DC\2579340.25

C.    <u>Voting Deadline</u>

16.    Pursuant to Bankruptcy Rule 3017(c), at the time of or before the approval of the disclosure statement, "the court shall fix a time within which the holders of claims and interests may accept or reject the plan."  The Debtor requests that the Court establish the business day that is approximately thirty-five (35) days after the date of entry of an order approving the Disclosure Statement (the "Disclosure Statement Approval Date"), at 5:00 p.m. (Eastern Time), as the deadline by which all ballots must be received by the Voting Agent (the "Voting Deadline").  Such date will permit a reasonable period for the mailing of the solicitation materials after the Disclosure Statement Approval Date, as discussed in paragraph 18 below.  The Debtor also requests that it be permitted to extend the Voting Deadline at any time before or after the Voting Deadline, on behalf of any individual voter or any voting class, as facts and circumstances may require.  The Debtor would propose to implement any such extension by filing notice thereof with the Court and by serving a copy of such notice upon the Voting Agent.

D.    <u>Ballots</u>

17.    The forms of beneficial owner and master ballots attached as <u>Exhibit A-1</u> and <u>A-2</u> for holders of Noteholder Claims in Class 5 reflect developments in the law and practice with respect to voting by holders of public debt securities.  The form of ballot attached hereto as <u>Exhibit B</u> for holders of Preferred Stock Interests/Claims in Class 6 is derived from Official Form No. 14, but includes certain modifications necessary to facilitate the particular requirements of the Plan.  The Debtor requests that the Court approve the attached forms of ballots for use with respect to the solicitation of votes on the Plan.

DC\2579340.25

E.    Solicitation Letter

18.    The Debtor intends to transmit to holders of Claims and Interests entitled to vote on the Plan a solicitation letter from its management that encourages such holders to vote in favor of the Plan, in the form attached hereto as Exhibit C (the "Debtor Solicitation Letter").  The Debtor requests that the Court approve inclusion of the Debtor Solicitation Letter in the solicitation materials.

F.    Solicitation of Votes in Classes 5 and 6

(i)    General Issues Regarding Solicitation of Votes in Classes 5 and 6

19.    Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims and interests upon approval of a disclosure statement.  Unless otherwise ordered, such materials include the plan or a court-approved summary of the plan, the court-approved disclosure statement, notice of the voting deadline and any other information as the court may direct.

20.    In accordance with Bankruptcy Rule 3017(d), the Debtor proposes to cause the Voting Agent to commence transmitting by first class mail,[5] no later than five (5) days after the Disclosure Statement Approval Date (the "Solicitation Commencement Date"), to each of the holders of Claims in Class 5 and Interests in Class 6 (who are entitled to vote on the Plan as described in paragraph 21), a solicitation package containing:

(a)    the Debtor Solicitation Letter (as provided for in paragraph 18, in paper form);

(b)    the notice of the confirmation hearing and objection deadline (as provided for in paragraph 67 below), in paper form;

---

[5]    With respect to parties outside the United States, the Solicitation Packages will be transmitted to those parties who are entitled to vote on the Plan, by Federal Express or other similar overnight service.

(c)      a copy, in paper or CD form, of the Disclosure Statement and all exhibits, including the Plan;[6]

(d)      an instruction letter for use of the CD or obtaining a paper copy of the Disclosure Statement, in paper form;

(e)      an appropriate ballot (as described in paragraph 17), in paper form;

(f)      a pre-addressed return envelope; and

(g)      such other information as the Court may direct or approve

(collectively, the "Solicitation Package").

21.      The Debtor proposes that the following holders of Claims and Interests classified within Classes 5 and 6, respectively, be permitted to vote on the Plan and, thus, to receive the Solicitation Package:

(a)      record and beneficial holders, as of the Voting Record Date, of Noteholder Claims in Class 5, subject to the special procedures outlined in paragraphs 22-29; and

(b)      holders, as of the Voting Record Date, of Preferred Stock Interests/Claims in Class 6.

(ii)      Special Procedures for Providing Solicitation Packages to Holders of Noteholder Claims

22.      Bankruptcy Rule 3017(e) provides that "the court shall consider [at the disclosure statement hearing] the procedures for transmitting the documents and information required by [Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes and other securities, determine the adequacy of the procedures, and enter any orders the court deems appropriate." Fed. R. Bankr. P. 3017(e).

23.      As noted above, the Debtor's public debt securities consist of the Old Notes, which are classified in Class 5 as Noteholder Claims. The class of Noteholder Claims is entitled to receive the Solicitation Package as provided for above.

---

[6]      The appendices to the Disclosure Statement are as follows:  Plan (Appendix A), Summary of Material Terms of Documents Included in Plan Supplement (Appendix B), Organizational Chart (Appendix C), and Liquidation Analysis (Appendix D).

24.     Because of the complexity and difficulty associated with reaching beneficial owners of public debt securities, many of which hold their securities in brokerage accounts and through several layers of ownership, and because of the added complexity of identifying all beneficial holders of such public securities, the Debtor proposes that the Indenture Trustee for the Old Notes (the "Indenture Trustee") be required to provide the Voting Agent with the names and addresses of the registered holders of the Old Notes as of the Voting Record Date (the "Note Record Holders") in electronic format no later than three (3) days after the Voting Record Date,[7] unless otherwise agreed to by the Indenture Trustee and the Voting Agent.

25.     The Debtor proposes to cause the Voting Agent to transmit the Solicitation Package to holders of Noteholder Claims in Class 5 by mailings made no later than the Solicitation Commencement Date to (a) each Note Record Holder for which the Voting Agent has received addresses in electronic format from the Indenture Trustee (or agents therefor) and (b) each bank, brokerage firm, other nominee or agent for any such nominee (the "Note Nominees") identified by the Debtor or the Voting Agent as an entity through which the beneficial owners of the Old Notes (the "Note Beneficial Owners") hold or held the public securities as of the Voting Record Date.

26.     As to the latter, the Debtor requests that the Court order the Note Nominees to distribute the Solicitation Package to the Note Beneficial Owners within five (5) business days after receipt of the Solicitation Packages from the Voting Agent and in a manner customary in the securities industry so as to maximize the likelihood that Note Beneficial

---

[7]     The Voting Agent will serve notice of this Motion on the Nominees (defined below) and notify them of this requirement.

Owners will receive the materials and be given the opportunity to exercise their rights in a timely fashion.

27.    The Debtor requests that the Court authorize two options for Note Nominees to obtain the votes of the Note Beneficial Owners.  Under the first option, the Note Nominees will transmit the Solicitation Packages to Note Beneficial Owners along with a ballot for the Note Beneficial Owners (the "Beneficial Owners Ballot") substantially in the form proposed in Exhibit A-1, and a return envelope provided by, and addressed to, the requisite Note Nominees.  The Note Nominees will then summarize the individual votes reflected on the Beneficial Owner Ballots on a master ballot (the "Master Ballot") to be provided to them by the Debtor in substantially the form proposed in Exhibit A-2.  The Note Nominees will then return the Master Ballot to the Voting Agent by the Voting Deadline.

28.    As an alternative, the Note Nominees may pre-validate the Beneficial Owner Ballots (a "Pre-Validated Ballot") by indicating on the ballot the Note Beneficial Owner, the principal amount held by such Note Beneficial Owner, and the appropriate account numbers through which the Note Beneficial Owner's holdings are derived.  The Note Nominee would then forward the Solicitation Package, including the Pre-Validated Ballot, to the Note Beneficial Owner for voting by such Note Beneficial Owner.  The Note Beneficial Owner would be responsible for returning the Pre-Validated Ballot to the Voting Agent.

29.    This procedure adequately recognizes the complex structure of the securities industry, enables the Debtor to transmit the Solicitation Packages to the Note Record Holders and Note Beneficial Owners, and affords such persons with a fair and reasonable opportunity to exercise their rights.  The Debtor requests that the Court authorize it to reimburse the Note Nominees for their reasonable, actual and necessary out-of-pocket

expenses incurred in performing the tasks described above upon written request by such entities (subject to the Court's retention of jurisdiction to resolve any disputes over any request for such reimbursement).

G.    Notice of Non-Voting Status

30.    Under the Plan, Administrative Claims, the DIP Facility Claim and Priority Tax Claims are unclassified, non-voting Claims that are entitled to be treated in accordance with Bankruptcy Code Section 1129(a)(9). Other Priority Claims in Class 1, Secured Claims in Class 2, General Unsecured Claims in Class 3 and Intercompany Claims in Class 4 are proposed to be unimpaired, as defined in Bankruptcy Code Section 1124 and, pursuant to Bankruptcy Code Section 1126(f), the holders of such Claims are not entitled to vote on the Plan.

31.    Bankruptcy Rule 3017(d) permits a bankruptcy court to order that the disclosure statement and plan need not be mailed to any unimpaired class and to approve instead the mailing of a "notice that the class is designated in the plan as unimpaired and notice of the name and address from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, [and] notice of the time fixed for filing objections to and the hearing on confirmation."

32.    Accordingly, the Debtor proposes to cause the Voting Agent to mail to holders of Administrative Claims, the DIP Facility Claim, Priority Tax Claims, Other Priority Claims in Class 1, Secured Claims in Class 2, General Unsecured Claims in Class 3 and Intercompany Claims in Class 4 (collectively, the "Unimpaired Holders") a notice in substantially the form attached hereto as Exhibit D (the "Notice of Non-Voting Status"), in lieu of a Solicitation Package. The Notice of Non-Voting Status summarizes the treatment provisions of the Plan as applicable to the Classes of Claims held by the Unimpaired Holders.

13

In addition, the Notice of Non-Voting Status provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) instructions regarding the various ways to obtain and/or view copies of the Disclosure Statement and Plan and other documents, including how to obtain electronic copies of such documents, (d) information regarding the confirmation hearing and (e) directions for filing objections to the confirmation of the Plan. The Notice of Non-Voting Status will be sent on or before the Solicitation Commencement Date to Unimpaired Holders as of the Voting Record Date.

33.    The Debtor believes that mailing the Notice of Non-Voting Status as described above satisfies the requirements of Bankruptcy Rule 3017(d) with respect to the Unimpaired Holders.  Therefore, the Debtor requests that the Court direct that the Disclosure Statement and Plan need not be mailed to Unimpaired Holders.

H.    Notice of Deemed Rejecting Status

(i)    Rationale for Providing Notice of Deemed Rejecting Status to Holders of Interests/Claims in Classes 7 and 8

34.    Under the Plan, holders of Allowed Common Stock Interests/Claims in Class 7 will, if Class 5 and Class 6 vote to accept the Plan, receive a pro rata share of 5% of the New Common Stock to be issued under the Plan (subject to dilution on account of New Common Stock issued pursuant to the New Management Incentive Plan).  Holders of Unexercised Common Stock Rights in Class 8 (and together with holders of Common Stock Interests/Claims in Class 7, the "Deemed Rejecting Holders") will not receive or retain any property under the Plan on account of such Interests.  The Plan provides that the Deemed Rejecting Holders are not entitled to vote on the Plan.

35.    The rationale for the Debtor's proposal that the holders of Interests/Claims in Classes 7 and 8 be deemed to reject the Plan is sound.  To begin, the Debtor is unable to pay

holders of Noteholder Claims in Class 5 and Preferred Stock Interests/Claims in Class 6 in full. Therefore, consistent with the absolute priority rule, the Debtor is not required to provide the holders of Class 7 Common Stock Interests/Claims and the holders of Class 8 Unexercised Common Stock Rights with a distribution under the Plan. However, the Plan is somewhat different from a more traditional "waterfall" distribution in light of the fact that, upon the affirmative vote of Class 5 Noteholder Claims and Class 6 Preferred Stock Interests/Claims (whose claims are senior to those of the holders of Class 7 Common Stock Interests/Claims), the Plan nonetheless provides that each holder of Allowed Common Stock Interests/Claims will receive a pro rata share of 5% of the New Common Stock (subject to dilution on account of New Common Stock issued pursuant to the New Management Incentive Plan). Notwithstanding this variation from the norm, the Debtor believes that applicable law does not require solicitation of votes from the holders of Common Stock Interests/Claims or Unexercised Common Stock Rights so long as such holders are provided an opportunity to object to confirmation of the Plan.

36.    In this regard, Bankruptcy Code Section 1126(g) provides:

> Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interest.

11 U.S.C. § 1126(g).

37.    In the present case, the holders of Class 7 Common Stock Interests/Claims are not "entitled" under the Bankruptcy Code's priority scheme to any distribution on account of their Interests/Claims. The proposed potential distribution to Class 7 Common Stock Interests/Claims is the product of the negotiated agreement among the Debtor, the Consenting

Noteholders (as defined in the Plan) who hold approximately 65% in amount of the Noteholder Claims and the holders of the Preferred Stock Interests/Claims, and is expected to be approved by the affirmative vote of the holders of Allowed Class 5 Noteholder Claims and Allowed Class 6 Preferred Stock Interests/Claims.  If the holders of the Allowed Class 5 Noteholder Claims and the holders of the Allowed Class 6 Preferred Stock Interests/Claims do not vote in favor of the Plan by the requisite amounts needed to carry each of such Classes, holders of Allowed Class 7 Common Stock Interests/Claims will not receive any recovery under the Plan. But notwithstanding the possibility of receiving a distribution upon such agreement and affirmative vote, the holders of Common Stock Interests/Claims are simply not entitled to receive or retain any property under the Plan because the valuation of the Debtor establishes that the Debtor's common equity is "out of the money."  Accordingly, consistent with the language in Bankruptcy Code Section 1126(g), Class 7 may be deemed to have rejected the Plan.

38.    Moreover, the results from a solicitation of votes from the holders of Common Stock Interests/Claims would be irrelevant since a rejection of the Plan by holders of such Interests/Claims would not change the ultimate outcome of the solicitation process. Assuming, arguendo, that the holders of Common Stock Interests/Claims were afforded an opportunity to vote and rejected the Plan, the Debtor contends that the Plan is nevertheless confirmable over their rejection pursuant to the cram-down provisions of Bankruptcy Code Section 1129(b).

39.    This Court and other courts have granted similar relief on many occasions. See, e.g., In re Regent Commc'ns, Inc., Case No. 10-10632 (KG) (Bankr. D. Del. Mar. 22, 2010); In re Globix Corp., Case No. 02-10647 (PJW) (Bankr. D. Del. Mar. 6, 2002); In re

Tokheim Corp., Case No. 00-03455 (PJW) (Bankr. D. Del. Aug. 30, 2000); In re Philip Servs.,

Inc., Case No. 99-02385 (MFW) (Bankr. D. Del. Sept. 21, 1999); In re The Grand Union Co.,

Case No. 98-27912 (NLW) (Bankr. D.N.J. June 24, 1998).

40.    In Regent, Globix, Tokheim, Philip Services and Grand Union, the

respective debtors requested permission not to solicit votes from holders of prepetition

common stock because the debtors were insolvent, the stockholders would otherwise be

deemed to have rejected the plan if no distribution under the plan were made, and the

stockholders were provided an opportunity to object to confirmation.  Because the distribution

to the prepetition stockholders was nominal, the debtors were not required to undertake an

otherwise costly and ultimately wasteful solicitation.  See also In re PWS Holding Corp., 228

F.3d 224, 231- 232 (3d Cir. 2000) (acknowledging holders without interest may be deemed to

reject plan of reorganization); In re Egan, 142 B.R. 730, 733 (Bankr. E.D. Pa. 1992)

(permitting the debtors not to resolicit a class previously deemed to reject the debtor's original

plan but receiving a nominal distribution under the debtor's revised plan); In re Union County

Wholesale Tobacco & Candy Co., 8 B.R. 442, 443 (Bankr. D.N.J. 1981) (holding that the

debtor need not solicit the classes subject to cramdown treatment nor provide the members of

such classes with a disclosure statement).

41.    Based upon the foregoing, the Debtor proposes to provide, on or before

the Solicitation Commencement Date, to the Deemed Rejecting Holders, a notice of their non-

voting and deemed rejecting status (the "Notice of Deemed Rejecting Status") in substantially

the form attached hereto as Exhibit E.  The Notice of Deemed Rejecting Status summarizes the

treatment provisions of the Plan that apply to the class of Interests/Claims held by the Deemed

Rejecting Holders.  In addition, like the Notice of Non-Voting Status, the Notice of Deemed

Rejecting Status provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) instructions regarding the various ways to obtain and/or view copies of the Disclosure Statement and Plan and other documents, including how to obtain electronic copies of such documents, (d) information regarding the confirmation hearing and (e) directions for filing objections to the confirmation of the Plan. The Notice of Deemed Rejecting Status also includes information about the special bar date for certain securities-related claims (including the Claims arising from the USEC Common Stock that are included within the definition of Common Stock Interests/Claims), which the Debtor seeks to establish below.

42. The Debtor requests that the Court waive the requirements of Bankruptcy Rule 3017(d) as they may apply to Deemed Rejecting Holders and authorize the Debtor to provide for the mailing of the Notice of Deemed Rejecting Status to such holders in lieu of transmitting a Solicitation Package to each such holder.

(ii) Special Issues Related to Providing Notice of Deemed Rejecting Status to Interest Holders of Common Stock Interests/Claims in Class 7

43. Reaching the Interest holders of Common Stock Interests/Claims (i.e., the current holders of USEC Common Stock) in Class 7, which are public equity securities or arise from current or former holdings of public equity securities, presents certain unique issues and, thus, requires a special procedure. Specifically, given the complexity and difficulty associated with reaching the Interest holders of Common Stock Interests/Claims, the Debtor proposes that the Notice of Deemed Rejecting Status be sent in a manner customary in the securities industry so as to maximize the likelihood that Interest holders of Common Stock Interests/Claims receive such notice in a timely fashion.

DC\2579340.25

44.     Thus, the Debtor proposes to have the Voting Agent transmit the Notice of Deemed Rejecting Status to the Interest holders of Common Stock Interests/Claims by mailing a copy no later than the Solicitation Commencement Date to (a) each registered holder of USEC Common Stock as of the Voting Record Date (the "Interest Record Holder") and (b) to each bank, brokerage firm, other nominee or agent for such nominee (the "Interest Nominee") identified by the Debtor or the Voting Agent as an entity through which beneficial owners hold the USEC Common Stock (the "Interest Beneficial Owners").

45.     To facilitate this mailing process, the Debtor requests that the Court order the transfer agent for the USEC Common Stock to provide the Voting Agent, by a date that is no later than three (3) days after the Voting Record Date, an electronic file (excel or comma delimited) containing the names, addresses and holdings of the respective Interest Record Holders as of the Voting Record Date or, if unable to provide an electronic file, two sets of adhesive labels and a list containing the same information.

46.     In addition, the Debtor proposes that the Court order the Interest Nominees to distribute the Notice of Deemed Rejecting Status to the respective Interest Beneficial Owners within five (5) business days after receipt of such notice from the Voting Agent.

(iii)     Special Issues Related to Providing Notice of Deemed Rejecting Status to Claim Holders of Common Stock Interests/Claims in Class 7

47.     The Plan's definition of Common Stock Interests/Claims includes "any Claims against the Debtor that are based upon or arise from USEC Common Stock and are subordinated pursuant to Bankruptcy Code Section 510(b)." See Plan Section 1.2(p).  The Debtor is not aware of any such Claims and thus is not in a position to identify and provide notice to any such holders.  Moreover, if there are any such Claim holders, they may have sold

their common equity interests in USEC at some time prior to the Petition Date and are not currently among the holders of USEC Common Stock who will receive the Notice of Deemed Rejecting Status proposed above for Interest holders.  The complexities and costs involved in providing actual notice to such unknown Claim holders make furnishing such notice impractical.  Accordingly, the Debtor seeks this Court's determination that the furnishing of a publication notice in the form attached hereto as <u>Exhibit F</u> (the "Publication Notice of Deemed Rejecting Status")[8] is sufficient to provide notice of the Plan's proposed treatment of Common Stock Interests/Claims to any such Claim holders and to bind such holders.  The Publication Notice of Deemed Rejecting Status also includes information about the special bar date for certain securities-related claims (including the Claims arising from the USEC Common Stock that are included within the definition of Common Stock Interests/Claims), which the Debtor seeks to establish below.

48.    The proposed scope of notice is entirely consistent with the noticing standards established by this Court, which make clear that a debtor "need only do what is reasonable under the circumstances to provide notice to ascertainable creditors." <u>In re New Century TRS Holdings, Inc.</u>, 465 B.R. 38, 46-47 (Bankr. D. Del. 2012) (although review of debtor's books and records showed that claimant was a customer who had entered into a loan transaction with the debtor and, thus, her identity was reasonably ascertainable from the debtor's records, court noted that records did not indicate that  claimant would potentially file suit in the future and, thus, she was not a known creditor entitled to mailed notice).  Indeed, this Court has established the following factors for determining what is reasonable: "(1)

---

[8]    Although referred to here as the Publication Notice of Deemed Rejecting Status, such notice is entitled "Notice to Current and Former Holders of Public Securities Issued by USEC Inc." and is intended to serve the dual purpose of providing publication notice (a) to the Deemed Rejecting Holders of the Plan terms applicable to their Interests/Claims and (b) to the current and former holders of the Old Notes and the USEC Common Stock of the special bar date for certain securities-related Claims that is proposed to be established later in this Motion.

whether the identity of the creditors or their claims are conjectural or can be reasonably ascertained, (2) whether the cost of giving actual notice would consume a disproportionate share of the debtor's resources, and (3) the obligation of the court to existing creditors and the debtor's stockholders in light of the potential delay and the balance of the debtor's resources. Id. at 46-47. See also Chemetron Corp. v. Jones, 72 F.3d 341 (3d Cir. 1995) (where group of former residents of a neighborhood containing toxic uranium brought suit against debtor four years after bar date arguing they were "known" creditors entitled to actual mailed notice, not just publication notice, court explained that "[a] creditor's identity is reasonably ascertainable if that creditor can be identified through reasonably diligent efforts" and ultimately held (a) it would have been impractical or impossible for the debtor to identify and notice every potential claimant and (b) notice by publication was sufficient).[9]

49.    In light of the foregoing, the Debtor submits that the form of Publication Notice of Deemed Rejecting Status is reasonable and would ask the Court to approve it. Additionally, the Debtor requests that the Court authorize the Debtor to publish the Publication Notice of Deemed Rejecting Status in the Wall Street Journal (global edition) and on the Logan & Company, Inc. website available via http://www.loganandco.com, on or as soon as reasonably practicable after the Solicitation Commencement Date. The Debtor believes that placement of the Publication Notice of Deemed Rejecting Status in this manner will provide reasonable and sufficient notice to all applicable parties of their rights with respect to the Plan.

---

[9]    In Chemetron, the court noted that "[r]easonable diligence does not require impracticable and extended searches . . . in the name of due process. The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required." 72 F.3d at 346 (quotations omitted). The court then stated that an "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Id.; see also In re W.R. Grace & Co., 2009 U.S. App. LEXIS 5281 *7 (3d Cir. (Del.) 2009) (in response to argument by claimants asserting asbestos claims after bar date, who asserted they were "known" claimants entitled to notice by mail, court restated standard of diligence noted in Chemetron and then found that in order for the debtor to ascertain the identity of the potential claimants, it would have had to undertake the unreasonable exercise of conducting title searches of thousands of buildings where asbestos-containing product was installed and locate the current owners of those buildings).

I.      Notice to Contract and Lease Parties

50.     The Debtor is a party to certain contracts and leases (collectively, the "Contracts and Leases").  As indicated in the Plan, the Debtor intends to assume all Contracts and Leases that are not rejected.

51.     To ensure that counterparties to the Contracts and Leases receive notice of the Plan and the treatment of their Contracts and Leases in the Plan, the Debtor proposes to cause to be mailed to such parties a notice in substantially the form attached hereto as Exhibit G (the "Contract and Lease Parties Notice").   The Contract and Lease Parties Notice describes the provisions of the Plan relating to the treatment of the Contracts and Leases.  It also provides  (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) instructions regarding the various ways to obtain and/or view copies of the Disclosure Statement and Plan and other documents, including how to obtain electronic copies of such documents, (d) information regarding the confirmation hearing and (e) directions for filing objections to the confirmation of the Plan.

52.     The Debtor requests that the Court approve the Contract and Lease Parties Notice as providing sufficient notice of the Plan to Contracts and Leases counterparties not otherwise designated to receive notice of the Plan.

J.      When No Notice or Transmittal Necessary

53.     The Debtor proposes that no notice related to the Plan need be transmitted to (a) holders of Claims listed on the Schedules of Liabilities (or any amendments thereto) that have already been paid in full during this case or that are authorized to be paid in full in the ordinary course of business pursuant to orders previously entered by this Court, (b) any holder of a Claim listed on a notice of satisfaction by the Voting Record Date unless the holder thereof has filed an objection thereto by the objection deadline and such objection has been

22

granted by this Court, (c) any person to whom the Debtor mailed a notice of the commencement of the case and first meeting of creditors if such notice was returned marked "undeliverable" or "moved - no forwarding address" or for a similar reason, unless the Debtor or its agents have been informed in writing by such person of, or have otherwise ascertained, that person's new address or (d) any holder of a claim that was disallowed in full by order of the Court.

K.    Informational Mailing of Solicitation Packages

54.    Solicitation Packages and all forms of ballots and notices proposed herein will be mailed for informational purposes to the U.S. Trustee and other parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

L.    Summary of Voting/Noticing Rights

55.    Pursuant to the procedures outlined above, if approved by the Court, the following categories of Claims against and Interests in the Debtor will have the rights and be entitled to receive the solicitation or notice materials specified below:

| Claims/Interests[10] | Rights | Materials |
|---|---|---|
| Administrative Claims | Notice | Notice of Non-Voting Status |
| DIP Facility Claim | Notice | Notice of Non-Voting Status |
| Priority Tax Claims | Notice | Notice of Non-Voting Status |
| Class 1 – Other Priority Claims | Notice | Notice of Non-Voting Status |
| Class 2 – Secured Claims | Notice | Notice of Non-Voting Status |
| Class 3 – General Unsecured Claims | Notice | Notice of Non-Voting Status |
| Class 4 – Intercompany Claims | Notice | Notice of Non-Voting Status |
| Class 5 – Noteholder Claims | Voting | Solicitation Package |
| Class 6 – Preferred Stock Interests/Claims | Voting | Solicitation Package |

---

[10]    To the extent that any party files a timely Proof of Claim or Proof of Interest and did not otherwise receive the Confirmation Hearing Notice (defined below), the Debtor will cause the Confirmation Hearing Notice to be served on such party within five (5) days of the filing of the Proof of Claim or Proof of Interest.

DC\2579340.25

| Class 7 – Common Stock Interests/Claims | Notice | Notice of Deemed Rejecting Status<br><br>Publication Notice of Deemed Rejecting Status |
| Class 8 – Unexercised Common Stock Rights | Notice | Notice of Deemed Rejecting Status |
| Counterparties to Contracts and Leases | Notice | Contract and Lease Parties Notice |

## III. APPROVAL OF VOTE TABULATION PROCEDURES

56.     To avoid uncertainty, to provide guidance to the Debtor and the Voting Agent, and to avoid the potential for inconsistent results, the Debtor requests that the Court, pursuant to Bankruptcy Code Section 105(a), establish the guidelines set forth below for tabulating the votes to accept or reject the Plan.

57.     <u>Votes Counted</u>.  Subject to paragraphs 58-63 below, the Debtor proposes that any ballot that is timely received, that contains sufficient information to permit the identification of the Claim or Interest holder and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.  In the event that no votes to accept or reject the Plan are received with respect to a particular Class, such Class shall be deemed to have voted to accept the Plan.

58.     <u>Votes Not Counted</u>.  The Debtor further proposes that the following ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a)     any ballot received after the Voting Deadline unless the Debtor has granted an extension of the Voting Deadline with respect to such ballot;

(b)     any ballot that is illegible or contains insufficient information to permit the identification of the Claim or Interest holder;

(c)     any ballot cast by or on behalf of a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

24

(d)   any ballot that does not indicate an acceptance or a rejection of the Plan or that indicates both an acceptance and a rejection;

(e)   any ballot that partially accepts and partially rejects the Plan; or

(f)   any unsigned ballot or any ballot that has a non-original signature (except as provided for Master Ballots transmitted by facsimile).

59.   The Debtor also reserves the right to reject any and all ballots not in proper form, the acceptance of which would, in the opinion of the Debtor or its counsel, be unlawful.  The Debtor further reserves the right to waive any defects or irregularities or conditions of delivery as to any particular ballot.  The interpretation (including the ballot and the respective instructions thereto) by the Voting Agent and the Debtor, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties.  Unless waived, any defects or irregularities in connection with deliveries of ballots must be cured within such time as the Debtor (or the Bankruptcy Court) determines.  Neither the Debtor nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of ballots nor will any of them incur any liabilities for failure to provide such notification.  Unless otherwise directed by the Bankruptcy Court, delivery of such ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

60.   <u>Changing Votes</u>.  Notwithstanding Bankruptcy Rule 3018(a), whenever two or more ballots are cast voting the same Claim or Interest prior to the Voting Deadline, the last-dated ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and, thus, to supersede any prior ballots, without prejudice to the Debtor's right to object to the validity of the second ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if the objection is sustained, to count the first ballot for all purposes.  This

procedure of counting the last-dated ballot is consistent with practice under various state and federal corporate and securities laws.  Moreover, it will spare the Court and the Debtor the time and expense of responding to motions brought pursuant to Bankruptcy Rule 3018(a) attempting to show cause for changing votes.

61.    No Vote Splitting; Effect.  The Debtor proposes that the Court clarify that Claim or Interest splitting on a single ballot is not permitted and order that creditors or Interest holders who vote must vote the entire Claim or Interest amount represented on their ballot to either accept or reject the Plan.

62.    Withdrawal of Ballots.  The Debtor proposes to permit any Claim or Interest holder who has delivered a valid ballot for the acceptance or rejection of the Plan to withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline or, with the written consent of the Debtor, after the Voting Deadline.  A notice of withdrawal, to be valid, must (a) contain the description of the Claim(s) or Interest(s) to which it relates and the aggregate principal amount represented by such Claim(s) or Interest(s), (b) be signed by the withdrawing party in the same manner as the ballot being withdrawn, (c) contain a certification that the withdrawing party owns the Claim(s) or Interest(s) and possesses the right to withdraw the vote sought to be withdrawn and (d) be received by the Voting Agent prior to the Voting Deadline or after the Voting Deadline with the Debtor's written consent.

63.    No Voting by Facsimile or E-mail.  The Debtor proposes that the Court require that original executed ballots be returned to the Voting Agent and that the Voting Agent be directed to reject any ballot that is sent via facsimile or electronic mail transmission; *provided, however,* that ballots submitted by facsimile or electronic mail transmission may be

accepted by the Voting Agent in the sole discretion of the Debtor.  A Master Ballot, however, that is sent via facsimile and timely received by the Voting Agent will be accepted by the Voting Agent provided the original signed Master Ballot is received by the Voting Agent by overnight mail or courier within two (2) business days of submission of the facsimile.

64.    Counting Ballots of Holders of Noteholder Claims.  The Debtor proposes the following procedures for tabulating votes cast with respect to the Old Notes by the holders of Noteholder Claims in Class 5.  These procedures are designed to enable the Voting Agent to tabulate votes from such holders and to enable the Court to verify the results of that vote by requiring the collection and retention of data and documents regarding the vote.

(a)     The Debtor proposes that Note Nominees electing to use the Master Ballot voting process be required to retain for inspection by the Court the ballots cast by Note Beneficial Owners for one (1) year following the Voting Deadline.  Note Nominees using Pre-Validated Ballots should keep a list of those Note Beneficial Owners to whom Pre-Validated Ballots were sent for one (1) year following the Voting Deadline.

(b)     To avoid double counting, the Debtor proposes that (i) votes cast by Note Beneficial Owners of the Old Notes through a Note Nominee and transmitted by means of a Master Ballot or Pre-Validated Ballot, be applied against the positions held by such Note Nominee with respect to the Old Notes, and (ii) votes submitted by a Note Nominee on a Master Ballot or Pre-Validated Ballot not be counted in excess of the position maintained by the respective bank or brokerage firm on the Voting Record Date in the Old Notes.

(c)     To the extent that conflicting votes or overvotes are submitted on a Master Ballot or Pre-Validated Ballot, the Debtor proposes that the Voting Agent attempt to resolve the conflict or overvote prior to the Voting Deadline in order to ensure that as many of the votes as possible are accurately tabulated.

(d)     To the extent that overvotes on a Master Ballot or Pre-Validated Ballot are not reconcilable prior to the Voting Deadline, the Debtor proposes that the Voting Agent count votes in respect of such Master Ballot or Pre-Validated Ballot in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or Pre-Validated Ballots that contained the overvote, but only to the extent of the applicable bank's or brokerage firm's position on the Voting Record Date in the Old Notes.

(e)     Note Nominees generally are voting on behalf of the Note Beneficial Owners for whom they hold securities, and the Master Ballots that they fill out merely reflect the voting instructions given by those Note Beneficial Owners.   Thus, Note Nominees should be authorized to complete multiple Master Ballots, and the votes reflected by such multiple Master Ballots should be counted, except to the extent that they are duplicative of other Master Ballots.  For the same reasons as set forth above for allowing subsequently filed ballots to supersede previously filed ballots, the Court should order that, if two or more Master Ballots submitted are inconsistent in whole or in part, the latest dated Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Master Ballot, subject to the Debtor's right to object to the validity of the second Master Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if such objection is sustained, the first Master Ballot will then be counted.

(f)     To avoid inconsistent treatment, and to provide guidance to the Debtor and the Voting Agent, the Court should order that each Note Beneficial Owner of an Old Note is deemed to have voted the full principal amount of its claim relating to such Old Note, notwithstanding anything to the contrary on any ballot, although the Voting Agent may be asked to adjust the principal amount voted to account for any interest or accretion factor.

## IV.  ESTABLISHMENT AND NOTICING OF PLAN CONFIRMATION HEARING AND OBJECTION DEADLINE

65.   Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice by mail to all creditors of the time fixed for filing objections to and the hearing to consider confirmation of a chapter 11 plan.  Similarly, Bankruptcy Rule 2002(d) requires such notice to equity security holders to be given in the manner and form directed by the court. Bankruptcy Rule 2002(l) allows the court to order notice by publication if it finds that notice by mail is impracticable or that publication notice is desirable.

66.   In view of Bankruptcy Rule 2002(b), the Debtor requests that the Court schedule the hearing to consider confirmation of the Plan (the "Confirmation Hearing") for date that is at least seven (7) days after Voting Deadline.  The Debtor also requests that the Court establish the deadline for filing objections to the Plan (the "Plan Objection Deadline") on

the same date as the Voting Deadline, which would be approximately thirty (30) days after the Solicitation Commencement Date and at least seven (7) days before the Confirmation Hearing.

67.    On or as soon as reasonably practicable after the Solicitation Commencement Date and except as otherwise provided in this Motion, the Debtor proposes to provide notice of, *inter alia*, the Confirmation Hearing in substantially the same form attached hereto as Exhibit H (the "Confirmation Hearing Notice"), which the Debtor hereby requests that the Court approve.[11]  The Confirmation Hearing Notice provides (a) notice of the filing of the Plan, (b) notice of the approval of the Disclosure Statement, (c) information regarding the Confirmation Hearing, (d) disclosures concerning releases and injunctions provided for under the Plan and (e) directions for filing objections to the confirmation of the Plan by the Plan Objection Deadline.  As set forth above, the Confirmation Hearing Notice will be included in the Solicitation Packages mailed to holders of voting Claims in Class 5 and voting Interests in Class 6 and to each person or entity that has requested or that is required to receive notice pursuant to Bankruptcy Rule 2002, and will be posted on Logan & Company, Inc.'s website available via http://www.loganandco.com.  The substance of the information contained in the Confirmation Hearing Notice is also included in the Notice of Non-Voting Status, the Notice of Deemed Rejecting Status and the Publication Notice of Deemed Rejecting Status.

68.    The Confirmation Hearing Notice shall set forth the procedures for parties to object to the confirmation of the Plan.  In particular, the Confirmation Hearing Notice shall provide that objections to the confirmation of the Plan must be in writing and must:

(a)    (i) state the name and address of the objecting party and the nature of the claim or interest of such party, (ii) state with particularity the basis and nature of any

---

[11]    To ensure that all parties receive timely notice, the Confirmation Hearing Notice will be sent (a) to parties in the United States, by first class mail, (b) to parties outside the United States who are entitled to vote on the Plan, by Federal Express or other similar overnight service, and (c) to parties outside the United States who are not entitled to vote on the Plan, by expedited mail.

objection to or proposed modification of the Plan; and (iii) be filed with the Clerk's Office, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 together with proof of service, on or before the Plan Objection Deadline; and

(b)     be served, so as to be actually received on or before the Plan Objection Deadline, upon (i) the Office of the United States Trustee for the District of Delaware, attn: Mark S. Kenney, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, Delaware 19801 (ii) Latham & Watkins LLP, attn:   D. J. Baker, 885 Third Ave, New York, New York 10022, (iii) Richards, Layton & Finger, P.A., attn: Mark D. Collins, 920 N. King Street, Wilmington, Delaware 19801, (iv) Young, Conaway, Stargatt & Taylor, LLP, attn: James L. Patton, Jr., 1000 N. King Street, Wilmington, Delaware 19801, (v) Akin Gump Strauss Hauer & Feld LLP, attn: Michael Stamer, One Bryant Park, New York, New York 10036 and attn: James Savin, 1333 New Hampshire Ave. N.W., Washington DC 20036, (vi) Pepper Hamilton LLP, attn.: David Stratton, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899, and (vii) such other parties as the Bankruptcy Court may order.

69.     In addition, on or about the Solicitation Commencement Date, the Debtor proposes to publish a short-form notice of the Plan Objection Deadline and the Confirmation Hearing (the "Publication Notice"), substantially in the form attached hereto as Exhibit I, in the Wall Street Journal (global edition), the Washington Post, the Pike County News Watchman (located in Piketon, Ohio) and the The Oak Ridger (located in Oak Ridge Tennessee).

70.     The Debtor believes that service of the Confirmation Hearing Notice and placement of the Publication Notice as described above will provide sufficient notice to all parties in interest of the Plan Objection Deadline and the Confirmation Hearing.

## V.   ESTABLISHMENT OF SPECIAL BAR DATE FOR CERTAIN SECURITIES-RELATED CLAIMS AND APPROVING FORM AND MANNER OF NOTICE THEREOF

71.     As of the Petition Date, the Debtor's publicly-traded securities consisted of (a) Old Notes, and (b) the common equity in USEC outstanding prior to the Effective Date, including, without limitation, (i) any stock option or other right to purchase the common stock of USEC, together with any warrant, conversion right, restricted stock unit, right of first refusal, subscription, commitment, agreement, or other right to acquire or receive any such

common stock in USEC that have been fully exercised prior to the Effective Date and (ii) any preferred stock purchase right created pursuant to that certain Tax Benefit Preservation Plan dated as of September 29, 2011 between the Debtor and Mellon Investor Services LLC (collectively, the "USEC Common Stock").

72.    When a company commences a chapter 11 case, publicly-traded securities give rise to the assertion of claims (a) arising from the rescission of a purchase or sale of a security of the debtor, (b) for damages arising from the purchase or sale of such a security, or (c) for reimbursement or contribution allowed under Bankruptcy Code Section 502 on account of such a claim (collectively, a "510(b) Claim"). As of the date hereof, no 510(b) Claims have been asserted against the Debtor -- and the Debtor believes any such 510(b) Claim would be without merit and the Debtor would object to any such asserted Claim -- but it is conceivable that some person will come forward and assert the existence of such a Claim based on current or former holdings of the Old Notes or the USEC Common Stock. Given the prearranged nature of the Chapter 11 Case, and the Allowed status of the Noteholder Claims and the Preferred Stock Interests/Claims under the Plan, as well as the Unimpaired status of Other Priority Claims, Secured Claims, General Unsecured Claims and Intercompany Claims, the Debtor does not intend to request a general bar date applicable to all Claims. The absence of a general bar date, however, poses certain risks and implementation challenges to the Debtor with respect to 510(b) Claims, because the Plan does not currently provide for the treatment of any such Claims arising from the Old Notes and the Plan contemplates that any such Claims arising from the USEC Common Stock will share pro rata with Interests in a distribution of 5% of the New Common Stock to Common Stock Interests/Claims in Class 7.

73.    To avoid or enable the Debtor to deal effectively with such risks and implementation challenges, the Debtor seeks to establish a special bar date for 510(b) Claims only.  The Debtor would propose to provide notice of the special bar date through the terms of the Disclosure Statement, which will be distributed to current holders of the Old Notes in their capacity as holders of Noteholders Claims in Class 5 and will be available to all potential holders of 510(b) Claims whether based on the Old Notes or the USEC Common Stock as provided in the notices already proposed in this Motion.  Additionally, the Notice of Deemed Rejecting Status and the Publication Notice of Deemed Rejecting Status will include notice of the special bar date for current and former holders of the USEC Common Stock.  In addition, the Publication Notice of Deemed Rejecting Status, which as set forth in Exhibit F, is actually titled "Notice to Current and Former Holders of Public Securities Issued by USEC Inc.," also serves to provide notice of the special bar date to current and former holders of the Old Notes.

74.    The Debtor proposes that the special bar date be set on the same date and time as the Voting Deadline (the "Special Bar Date").[12]  As the Voting Deadline will be approximately thirty (30) days after the Solicitation Commencement Date, which will be the date on or about which the Disclosure Statement, the Notice of Deemed Rejecting Status and the Publication Notice of Deemed Rejecting Status – the specific documents containing notice of the Special Bar Date – will be mailed or placed, any person desiring to assert a 510(b) Claim will have a notice period that complies with the requirements of Bankruptcy Rule 2002(a)(7) (at least 21 days' notice by mail) and which is more than adequate under the circumstances.

75.    The Debtor further proposes that the notice of the Special Bar Date contained in the Disclosure Statement, the Notice of Deemed Rejecting Status and the

---

[12]    The Special Bar Date will not apply to, prejudice or otherwise affect the rights of the holders of Preferred Stock Interests/Claims in the event the Plan Sponsor Agreements are terminated.

Publication Notice of Deemed Rejecting Status direct persons desiring to assert a 510(b) Claim to deliver a Proof of Claim by no later than the Special Bar Date to Logan & Company, Inc., the Debtor's court-approved claim agent, at the following address:  USEC Inc. Claims Docketing Department, c/o Logan & Company, Inc., 546 Valley Road, Upper Montclair, NJ 07043.  Such notice will also advise such persons that a Proof of Claim form may be obtained from the claims agent's website, www.loganandco.com, under client name USEC Inc., and that any 510(b) Claim that is not asserted in a Proof of Claim received by the claims agent before the Special Bar Date will be barred and will not be entitled to receive any payment or distribution of property from the Debtor or its successors or assigns with respect to such Claim.

76.    The establishment of a special bar date is permitted by Bankruptcy Rule 3003(c)(3), which generally governs the filing of proofs of claim in a chapter 11 case and provides in relevant part: "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."  For the reasons set forth above, good cause exists for the establishment of a special bar date for any 510(b) Claims to be asserted against the Debtor, and the Debtor has proposed sufficient means for providing adequate notice by mail or publication of the Special Bar Date and the requirements for filing Proofs of Claim to any potential holders of such Claims.

## NOTICE

77.    Notice of this Motion will be given to: (a) the United States Trustee for the District of Delaware, (b) counsel to the Debtor's postpetition secured lender, (c) counsel to certain holders of the Old Notes who have entered into a plan support agreement with the Debtor, (d) counsel to the holders of the USEC Preferred Stock who have entered into plan support agreements with the Debtor, (e) counsel to the Department of Energy, (f) the parties included on the Debtor's list of twenty (20) largest unsecured creditors, and (g) all parties that

have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. The

Debtor submits that, under the circumstances, no other or further notice is required.

**WHEREFORE**, the Debtor respectfully requests that this Court (a) enter the Order substantially in the form attached hereto as Exhibit J (i) approving the Disclosure Statement, (ii) approving the dates, procedures and forms applicable to the solicitation of votes on and noticing with respect to the Plan, (iii) approving certain vote tabulation procedures, (iv) establishing the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan, and (v) setting a special bar date for certain securities-related claims, all as more particularly described above and (b) grant such other and further relief as is just and proper.

Dated:  Wilmington, Delaware
        March 5, 2014

RICHARDS, LAYTON & FINGER, P.A.


Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3584)
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
E-mail: collins@rlf.com
E-mail: merchant@rlf.com

- and -

D. J. Baker
Rosalie Walker Gray
Adam S. Ravin
Annemarie V. Reilly
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  212-906-1200
Fax:  212-751-4864
E-mail: dj.baker@lw.com
        rosalie.gray@lw.com
        adam.ravin@lw.com
        annemarie.reilly@lw.com

Proposed Counsel for Debtor and Debtor in Possession

DC\2579340.25