**ORIGINAL**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :  Chapter 11
                                                                 :
                                                                 :  Case No. 14-10475 (CSS)
USEC INC.,                                                       :
                                                                 :  **Related Docket No. 4**
            Debtor.[1]                                           :
---------------------------------------------------------------- x

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 362(d), 363(b), 364(c)(1), 364(c)(2), 364(c)(3) AND 364(e) AND (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2)(A) AND (II) SCHEDULING FINAL HEARING**

Upon the Motion[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of interim and final orders, pursuant to Bankruptcy Code Sections 105(a), 362(d), 363(b), 363(c)(2)(A), 364(c)(1), 364(c)(2), 364(c)(3) and 364(e), Bankruptcy Rules 2002, 4001 and 6004 and Local Rules 2002-1 and 4001-2, authorizing the Debtor to, among other things, (i) incur postpetition indebtedness, (ii) grant security interests and superpriority claims and (iii) use cash collateral; and the Debtor having, more specifically sought entry of this Interim Order:

   (a)   approving the Debtor's entry into the Debtor-in-Possession Credit Agreement attached to the Motion as Exhibit B (the "DIP Credit Agreement") and authorizing it (i) to borrow from time to time, on an incremental basis, up to $50 million (the "DIP Loans") from its subsidiary United States Enrichment Corporation ("Enrichment Corp," and in its capacity as the lender under the DIP Credit Agreement, the "DIP Lender") subject to the Budget attached hereto as Exhibit A (as the same may

---

[1]   The last four digits of the Debtor's federal tax identification number are: (7911). The Debtor's mailing address is 6903 Rockledge Drive, Suite 400, Bethesda MD 20817.

[2]   Capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion or the DIP Credit Agreement, as applicable.

be amended or supplemented from time to time in accordance with the DIP Credit Agreement) and referenced in the DIP Credit Agreement (the "DIP Facility") and the variance permitted by Section 7.09 of the DIP Credit Agreement (the "Variance").

(b) affording the DIP Lender the protections of Bankruptcy Code Sections 364(c)(1), 364(c)(2) and 364(c)(3) with respect to the Debtor's obligations under the DIP Credit Agreement (collectively, the "DIP Obligations") by specifically ordering that such obligations are:

(i) afforded superpriority administrative claim status under Bankruptcy Code Sections 364(c)(1), having priority over any and all administrative expenses of the kind specified in Bankruptcy Code Section 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114, subject and subordinate only to, upon the occurrence and during the continuance of an Event of Default, the payment of the Carve-Out (as defined below) on the terms and conditions set forth herein; and

(ii) subject to the Carve-Out and specifically excluding until entry of the Final Order any Liens upon the Debtor's claims and causes of action under Bankruptcy Code Sections 502(d), 544, 545, 547, 548, 549 550 and/or 553 or similar state law and all proceeds of any of the foregoing (collectively, the "Avoidance Actions"), secured (x) pursuant to Bankruptcy Code Section 364(c)(2), by first priority perfected Liens on and security interests in any of the collateral under the DIP Credit Agreement (specifically including, without limitation, the "Collateral" and the Debtor's right, title and interest in the "Deposit Accounts," as such terms are defined in the DIP Credit Agreement, the "DIP Collateral") that is not subject to a Lien or security interest on the Petition Date; and (y) pursuant to Bankruptcy Code Section 364(c)(3), by second or other junior priority perfected Liens on and security interests in any of the DIP Collateral that is subject to validly existing, properly perfected and unavoidable Lien or security interest on the Petition Date held by a person or entity including Enrichment Corp (in its capacity as prepetition secured lender, the "Prepetition Lender");

(c) modifying the automatic stay imposed by Bankruptcy Code Section 362 solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Credit Agreement and this Interim Order;

(d) confirming the DIP Lender's good faith in furnishing the DIP Loans and the attendant applicability of the protections afforded by Bankruptcy Code Section 364(e);

(e) authorizing the Debtor to use the cash collateral, as defined in Bankruptcy Code Section 363(a), of the Prepetition Lender (the "Cash Collateral") to pay down the prepetition secured claim of the Prepetition Lender, as described below;

(f) authorizing the DIP Lender to terminate the commitment of the DIP Lender to make the DIP Loans (the "Commitment") on the terms set forth in the DIP Credit Agreement and this Interim Order, including upon the occurrence and during the continuance of an "Event of Default" under the DIP Credit Agreement and declare the DIP Loans then outstanding to be due and payable;

(g) scheduling a final hearing on the Motion to be held within fifty (50) days after the Petition Date (the "Final Hearing") to consider entry of a final order that grants all of the relief requested in the Motion on a final basis (the "Final Order"); and

(h) waiving any applicable stay, including under Bankruptcy Rule 6004 and any applicable Local Rules, and providing for immediate effectiveness of this Interim Order.

After due deliberation, and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND** that:

A. This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

B.  An interim hearing on the Motion was held and concluded before this Court on March 6, 2014 (the "Interim Hearing") and based on the record presented to the Court by the Debtor, the interim relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest and is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and otherwise is fair and reasonable and is essential for the continued operation of the Debtor's business.

C.  The Debtor stipulates, without binding any other party in interest, including a trustee appointed or elected in this Chapter 11 Case, or the Court to the following:

1.  Enrichment Corp, the proposed DIP Lender, was also the Prepetition Lender to the Debtor, providing both unsecured and secured financing, and it currently holds both unsecured and secured claims against the Debtor with respect to such financing. The unsecured financing provided to the Debtor by Enrichment Corp was (a) with respect to intercompany lending that occurred between September 30, 2011 and February 20, 2013 reflected as intercompany payables to Enrichment Corp that were not repaid as of the Petition Date (the "Unsecured Payables") and (b) with respect to intercompany lending that took place between February 21, 2013 and August 1, 2013, evidenced by a certain Demand Note dated as of May 28, 2013 (the amounts arising thereunder, the "Unsecured Note Debt"). As of January 31, 2014, based upon the Debtor's books and records, the aggregate amount owed by the Debtor to the Prepetition Lender with respect to the Unsecured Payables and the Unsecured Demand Note totaled approximately $274 million (inclusive of interest as of January 31, 2014), plus fees, costs and expenses and additional amounts that have accrued between January 31, 2014 and the Petition Date (collectively, the "Prepetition Unsecured Debt").

2. With respect to the secured financing, which commenced on August 2, 2013, the Debtor's books and records reflect that the Debtor was, as of January 31, 2014, obligated to the Prepetition Lender under that certain Amended and Restated Demand Note and corresponding Amended and Restated Pledge and Security Agreement, each dated as of January 24, 2014 (together, and with any related financing documents, the "Prepetition Credit Agreement"), which amended and restated that certain Demand Note and corresponding Pledge and Security Agreement dated as of August 2, 2013 to expand the collateral securing the Debtor's obligations to the Prepetition Lender for all subsequent borrowings, in the aggregate principal amount of not less than $56.4 million (inclusive of interest as of January 31, 2014), plus fees, costs and expenses and additional amounts that have accrued between January 31, 2014 and the Petition Date (collectively, the "Prepetition Secured Debt" and together with the Prepetition Unsecured Debt, the "Prepetition Obligations") and had granted liens and security interests (the "Prepetition Liens") to the Prepetition Lender pursuant to the Prepetition Credit Agreement in certain of the assets of the Debtor including, in particular (i) all accounts receivable from the DOE under the Cooperative Agreement, which accounts receivable constitute Cash Collateral for purposes of this Interim Order and are proposed to be applied against the Prepetition Secured Debt, (ii) with respect to all amounts borrowed on or after January 24, 2014, all Equipment used in, related to, or destined for the American Centrifuge Project (as defined in the Prepetition Credit Agreement), (iii) all documents, books and records related to the foregoing, and (iv) any and all proceeds, products, rents and profits of or from any and all of the foregoing (collectively, the "Prepetition Collateral").

3. The Debtor does not have any revenue-generating operations. Substantially all of the assets of the Debtor's corporate family are owned by Enrichment Corp. The Debtor has

historically been dependent on support from Enrichment Corp. Although the Debtor receives certain funds from the DOE as reimbursement for expenditures under the RD&D Program, the Debtor's books and records reflect that these funds are pledged to Enrichment Corp pursuant to the terms of the Prepetition Credit Agreement  Thus, the Debtor has not had any available sources of capital and financing other than as provided by Enrichment Corp in its capacity as the Prepetition Lender.

D.    From and after the Petition Date, in the absence of immediate access to the DIP Loans from Enrichment Corp in its capacity as the DIP Lender, the Debtor will be unable to bear the costs and expenses of the Chapter 11 Case, the value of the estate will deteriorate rapidly, and serious and irreparable harm to the Debtor, its estate and other stakeholders will occur, thus preventing the Debtor from realizing its chapter 11 objectives.

E.    Given (a) the nature of and risks associated with the Debtor's business, (b) that the Debtor does not have material unencumbered assets, and (c) discussions with the Debtor's prior third-party working capital lender, the Debtor does not believe that third-party debtor-in-possession financing is available to the Debtor. ~~Notably,~~ The Debtor believes that it is significant that the economic terms of the proposed DIP Loans from Enrichment Corp, as embodied in the DIP Credit Agreement, are more favorable to the Debtor than the economic terms of the loans previously provided to the Debtor and its subsidiaries from the prior third-party working capital lender, which were principally based on the assets and credit worthiness of Enrichment Corp.

F.    Financing on a postpetition basis is not otherwise available without the Debtor (i) granting to the DIP Lender, pursuant to Bankruptcy Code Section 364(c)(1), claims having priority over any and all administrative expenses of the kind specified in Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 or 1114, subject to the

6

Carve-Out and (ii) securing, pursuant to Bankruptcy Code Sections 364(c)(2) and 364(c)(3), such indebtedness and obligations with Liens on and security interests in the DIP Collateral as described below, subject to the Carve-Out.

G. The notice of the Interim Hearing and the Motion was served on (a) the United States Trustee for the District of Delaware, (b) counsel to the DIP Lender and the Prepetition Lender, (c) counsel to certain holders of the Debtor's convertible note debt who have entered into a plan support agreement with the Debtor, (d) counsel to the Debtor's preferred stockholders, (e) counsel to the DOE, (f) the parties included on the Debtor's list of twenty (20) largest unsecured creditors, and (g) the Debtor's cash management banks; and notice has been provided pursuant to Bankruptcy Code Section 364(c) and Bankruptcy Rule 4001(c). Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion complies with all relevant provisions of the Bankruptcy Rules and Local Rules and no other or further notice need be provided for entry of the Interim Order.

H. Based on the record presented to the Court by the Debtor at the Interim Hearing, the DIP Credit Agreement has been negotiated in good faith and at arm's length between the Debtor and the DIP Lender, and any credit extended, issued or made to the Debtor pursuant to the DIP Credit Agreement shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of Bankruptcy Code Section 364(e).

I. Based on the record presented to the Court by the Debtor at the Interim Hearing, the terms of the DIP Facility are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

DC\3121453.27RLF1 9994063v.1

J.	The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). The Motion and this Interim Order comply with Local Rule 4001-2. The permission granted herein to enter into the DIP Credit Agreement on the interim terms contained herein and to obtain funds thereunder on an interim basis pending the Final Hearing and entry of the Final Order is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Interim Order is in the best interest of the Debtor's estate and its creditors and other stakeholders as its implementation will, *inter alia*, allow for the Debtor to pay the costs and expenses of the Chapter 11 Case, preserve the value of the Debtor's assets and enhance the Debtor's prospects of realizing its chapter 11 objectives.

Based upon the foregoing findings and conclusions, and upon the record made before this Court by the Debtor at the Interim Hearing, and good and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED** that:

1.	The Motion is granted on an interim basis, subject to the terms and conditions set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. To the extent any provisions in this Interim Order conflict with any provisions of the DIP Credit Agreement, the provisions of this Interim Order shall control and govern to the extent of such conflict.

2.	The Debtor is expressly authorized and empowered to execute and deliver to the DIP Lender the DIP Credit Agreement and to obtain the DIP Loans. Additionally, the Debtor is authorized ~~and directed~~ to comply with and perform all of the terms and conditions of the DIP Credit Agreement and to repay amounts borrowed with interest to the DIP Lender in accordance with and subject to the terms and conditions set forth in the DIP Credit Agreement and this Interim Order.

3. The Debtor is expressly authorized to borrow from the DIP Lender, on the terms and subject to the conditions set forth in the DIP Credit Agreement and this Interim Order, a principal amount not to exceed $20 million in the aggregate, subject to periodic borrowing requests. The Debtor is authorized to use the proceeds of the DIP Loan for working capital needs and for general corporate purposes, in accordance with the terms of the DIP Credit Agreement and this Interim Order and [, unless otherwise ordered by the Court,] will only be used to pay, when due, the expenses set forth in the Budget (subject to the Variance).

4. For purposes of this Interim Order, the DIP Obligations shall be:

   a. Claims entitled to the benefits of Bankruptcy Code Section 364(c)(1), having superpriority over any and all administrative expenses of the kind specified in or arising or ordered under Bankruptcy Code Sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 (the "Superpriority Claims"), subject and subordinate only to, upon the occurrence and during the continuance of an Event of Default under the DIP Credit Agreement, the payment of the Carve-Out (defined below);

   b. Subject to the Carve-Out, secured pursuant to Bankruptcy Code Section 364(c)(2) by first priority perfected Liens on and security interests in any of the DIP Collateral (excluding Avoidance Actions pending entry of the Final Order) that is not subject to a Lien or security interest on the Petition Date; and

   c. Subject to the Carve-Out, secured pursuant to Bankruptcy Code Section 364(c)(3) by second or other junior priority perfected Liens on and security interests in any of the DIP Collateral (excluding Avoidance Actions pending entry of the Final Order) that is subject to a validly existing, properly perfected and unavoidable Lien or security interest on the Petition Date held by a person or entity including the Prepetition Lender.

5. The Liens on and security interests in the DIP Collateral granted pursuant to this Interim Order and the DIP Credit Agreement shall be referred to as the "<u>DIP Liens</u>." The DIP Liens are deemed to constitute valid, enforceable, unavoidable and duly perfected security interests and liens, and the DIP Lender is not required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state

DC\3121453.27RLF1 9994063v.1

law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the DIP Liens does not affect the validity, enforceability, unavoidability, perfection or priority of the DIP Liens. If, however, the DIP Lender shall determine to file any such financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such DIP Liens, the Debtor is ~~directed~~ authorized to cooperate with and assist in such process. The stay imposed by Bankruptcy Code Section 362(a) is hereby modified to allow the filing and recording of a certified copy of this Interim Order or any such financing statements, notices of lien or similar instruments, and all such documents shall be deemed to have been filed or recorded at the time of and on the date this Court enters this Interim Order.

6. The DIP Liens and Superpriority Claims, and other rights and benefits, and remedies granted under this Interim Order to the DIP Lender shall continue and be enforceable, for all purposes, in the Chapter 11 Case, and (a) shall not be subject to Bankruptcy Code Sections 506(c) (subject to entry of the Final Order), 510, 549, 550, or 551, (b) shall not be subordinate to, or *pari passu* with, any lien that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code Section 551, and (c) shall be valid and enforceable against any trustee or any other estate representative appointed or elected in the Chapter 11 Case, upon the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of the Chapter 11 Case to the maximum extent permitted by law. The DIP Liens and Superpriority Claims shall maintain their priority as provided in this Interim Order until the DIP Obligations have been indefeasibly paid in full in

cash and completely satisfied and the DIP Lender's commitment has been terminated in accordance with the DIP Credit Agreement.

7. Notwithstanding any provision of this Interim Order or the DIP Credit Agreement to the contrary, the DIP Liens and Superpriority Claims granted to the DIP Lender pursuant to the DIP Credit Agreement and this Interim Order shall be subject to a "Carve-Out." For purposes of this Interim Order, the "<u>Carve-Out</u>" means (a) all fees required to be paid to the U.S. Trustee and to the Clerk of the Bankruptcy Court pursuant to Section 1930(a) of Title 28 of the United States Code in such amount as is agreed to by the .U.S. Trustee or determined by order of the Court; *plus* (b) the unpaid fees and expenses of retained professionals of the Debtor employed pursuant to Bankruptcy Code Sections 327, 328, and 363 (including approved ordinary course professionals) (the "Debtor's Professionals") that are incurred prior to the Carve-Out Trigger Date (as defined herein), and including amounts incurred but not invoiced or approved prior to the Carve-Out Trigger Date, but not exceeding the amounts therefor contained in the Budget (subject to the Variance) (provided that all such fees and expenses are payable under Bankruptcy Code Sections 328, 330 and 331 and pursuant to an order of the Court); *plus* (c) without duplication of the amounts described in clause (b) above, the fees and expenses of the Debtor's Professionals to be incurred after the Carve-Out Trigger Date and that remain unsatisfied after the application of any retainers, which application is hereby approved (subject to disgorgement as provided below), in the aggregate amount not to exceed $1 million (provided that all such fees and expenses are payable under Bankruptcy Code Sections 328, 330 and 331 and pursuant to an order of the Court, and any fees and expenses satisfied by application of retainers shall nevertheless be subject to approval by the Court and if not approved the amount of the retainers applied thereto shall be subject to disgorgement); *plus* (d)

DC\3121453.27RLF1 9994063v.1

unpaid fees and expenses of the Debtor's claims and noticing agent not to exceed $20,000; *plus* (e) unpaid fees and expenses of committee members and of any retained professionals of any statutory committee appointed in this case (a "Statutory Committee") that are incurred prior to the Carve-Out Trigger Date and invoiced and payable under Bankruptcy Code Sections 328, 330 and 331 (but only to the extent that such fees and expenses and committee member expenses are payable pursuant to an order of the Court) but not exceeding the amounts therefore contained in the Budget (subject to the Variance); *provided* that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in this paragraph. As used herein, "Carve-Out Trigger Date" shall mean the date on which the DIP Lender provides written notice to the Debtor and counsel to the Debtor, with a copy of such notice to counsel for any Statutory Committee (if appointed) and counsel to the Consenting Noteholders, that the Carve-Out is invoked, which notice shall be delivered only (a) on or after and during the continuation of an Event of Default or (b) upon the occurrence of an event which would result in the Borrower being unable to satisfy any condition set forth in Sections 5.02(g) through (j) of the DIP Credit Agreement.

8. Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any Person or entity (with the exception of the Carve-Out) shall be imposed against the DIP Lender, its claims or the DIP Collateral under Bankruptcy Code Section 506(c) or otherwise, and the Debtor irrevocably waives any and all such rights, remedies and benefits under Bankruptcy Code Section 506(c) as to the DIP Lender, its claims or the DIP Collateral.

DC\3121453.27RLF1 9994063v.1

9. The DIP Lender shall not be subject to the equitable doctrine of "marshaling", "election of remedies" or any other similar doctrine, in each case, with respect to any of its interest in the DIP Collateral.

10. ~~The Debtor shall turnover all Prepetition Collateral that constitutes Cash Collateral, including, without limitation, ACP Cost Reimbursements that are the proceeds of expenditures made prior to the Petition Date to the Prepetition Lender, for application to and reduction of, the Prepetition Secured Debt.~~ In the event a party in interest successfully challenges the validity, priority, or extent of the Prepetition Lender's security interest, the Court may fashion an appropriate remedy with respect to any such Cash Collateral turned over to the Prepetition Lender.

11. As long as any portion of the DIP Obligations remains unpaid, or the Credit Agreement remains in effect, the Debtor shall not seek, and it shall constitute an Event of Default under the DIP Credit Agreement if (among other Events of Default contained in the DIP Credit Agreement) the Debtor seeks, or if there is entered, an order dismissing or converting the Chapter 11 Case to a case under another chapter of the Bankruptcy Code. If an order dismissing or converting the Chapter 11 Case under Bankruptcy Code Section 1112 or otherwise is at any time entered (or any other Event of Default occurs), (a) the Superiority Claims and DIP Liens granted pursuant to this Interim Order to the DIP Lender shall continue in full force and effect, shall remain binding on all parties in interest notwithstanding such dismissal and (b) this Court ~~shall~~ *may*, to the extent permitted by applicable law, retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such Superpriority Claims and DIP Liens.

DC\3121453.27RLF1 9994063v.1

12. Upon the occurrence of an Event of Default, and upon notice to the Debtor and counsel to the Consenting Noteholders, and any statutory committee the DIP Lender may exercise rights and remedies and take all or any of the following actions without further modification of the automatic stay pursuant to Bankruptcy Code Section 362 (which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions) in order to: (a) terminate the Commitment; (b) declare the DIP Loans then outstanding to be due and payable in whole (or in in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable); and/or (c) exercise any other right or remedy permitted to the DIP Lender under the DIP Credit Agreement, this Interim Order or by operation of law; <u>provided, however,</u> absent further order of the Court the DIP Lender may take the actions described in clause (c) above only after providing five (5) business days' prior written notice to the Court, the Debtor, the U.S. Trustee, counsel to the Consenting Noteholders, and any Statutory Committee appointed in the Chapter 11 Case.

13. The Debtor is authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements, as the DIP Lender may reasonably require, as evidence of and for the protection of the DIP Obligations, or which otherwise may be deemed reasonably necessary by the DIP Lender to effectuate the terms and conditions of this Interim Order and the DIP Credit Agreement.

14. The Debtor and the DIP Lender shall be authorized to implement, in accordance with the terms of the DIP Credit Agreement, any amendment, consents, modifications or waivers of the DIP Credit Agreement (including, without limitation, any amendment or supplement to the Budget) which are not material and adverse to the Debtor, and the Debtor shall provide the United States Trustee for the District of Delaware, counsel to the Consenting

14

Noteholders and counsel to any Statutory Committee with prior written notice (and, to the extent practicable, not less than three (3) business days prior written notice) of such amendments, consents, modifications or waivers. Any amendment, consent, modification or waiver of the DIP Credit Agreement which are material and/or adverse to the Debtor, shall be subject to prior approval by this Court upon motion by the Debtor.

15. ~~Having been found to be extending credit and making DIP Loans to the Debtor,~~ in good faith, the DIP Lender shall be entitled to the full protection of Bankruptcy Code Section 364(e) with respect to the DIP Obligations, the Superpriority Claims, and the DIP Liens created or authorized by this Interim Order in the event that this Interim Order or any authorization contained herein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal or vacation of this Interim Order shall not affect the validity of any obligation of the Debtor to the DIP Lender incurred pursuant to, or the grant of any protection afforded to the ~~DIP Lender under, this Interim Order~~.

16. The DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender and the Prepetition Lender granted by this Interim Order and the DIP Credit Agreement shall survive entry of any order which may be entered (a) confirming any plan of reorganization in the Chapter 11 Case (and the DIP Obligations shall not be discharged by the entry of any such order or pursuant to Bankruptcy Code Section 1141(d)(4), the Debtor having hereby waived such discharge); (b) converting the Chapter 11 Case to a case under Chapter 7; or (c) dismissing the Chapter 11 Case; and the terms and provisions of this Interim Order as well as the Superpriority Claims and DIP Liens granted pursuant to this Interim Order and the DIP Credit Agreement shall continue in full force and effect notwithstanding the entry of any such order, and such Superpriority Claims and DIP Liens shall maintain their priority as

provided by this Interim Order until all of the DIP Obligations are indefeasibly paid in full and discharged.

17. Notwithstanding anything in this Interim Order to the contrary, the DIP Lender's obligation to make DIP Loans in accordance with the DIP Credit Agreement shall automatically terminate without any further action by this Court or the DIP Lender, upon the Maturity Date.

18. The DIP Lender shall have no obligation to continue to provide postpetition funding to the Debtor pursuant to the DIP Credit Agreement in the event that (among other Events of Default) (a) the Final Order approving the DIP Credit Agreement is not entered within fifty (50) days after the Petition Date.

19. [*Subject to entry of a final order,*] Notwithstanding anything herein to the contrary, no Cash Collateral, Borrowings or any portion of the Carve-Out may be used to assert any claims or causes of action against the Prepetition Lender or object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, extent or enforceability of the Prepetition Obligations, the Prepetition Liens, the DIP Obligations, the DIP Liens, or the Superpriority Claims.

20. ~~Unless the Court, for cause, orders otherwise, the DIP Lender shall have the unqualified right to credit bid up to the full amount of the DIP Obligations in any sale of the DIP Collateral, under or pursuant to (a) Bankruptcy Code Section 363, (b) a plan of reorganization or plan of liquidation under Bankruptcy Code Section 1129, or (c) a sale or disposition by a chapter 7 trustee under Bankruptcy Code Section 725.~~

21. The DIP Lender and the Prepetition Lender may, as applicable, petition this Court for any such additional protection they may reasonably require with respect to the DIP Obligations, the Prepetition Obligations, or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Collateral and DIP

Collateral, as applicable. Except as otherwise set forth herein, entry of this Interim Order shall not in any way constitute agreement, consent, or acquiescence by the DIP Lender or Prepetition Lender to the terms of any plan of reorganization filed in the Chapter 11 Cases, other than the plan of reorganization that was filed with the Court on the Petition Date as such plan may be modified with, to the extent required, the consent of the DIP Lender and the Prepetition Lender, as applicable.

22. The Debtor shall pay all reasonable and documented fees, costs and expenses incurred by the DIP Lender as set forth in Section 9.03 of the Credit Agreement, without regard to the amounts set forth with respect thereto in the Budget. Payment of such fees shall not be subject to allowance by the Court. Professionals for the DIP Lender (collectively, the "Lender Professionals") shall submit copies of invoices to the U.S. Trustee, counsel to the Consenting Noteholders, counsel to the Statutory Committee (if applicable), and such other parties as the Court may direct, at least ten (10) days prior to payment by the Debtor. If the Debtor, the U.S. Trustee, a majority of the Consenting Noteholders or the Statutory Committee objects to the reasonableness of the fees and expenses of any Lender Professional and cannot resolve such objection among themselves, the objecting party may file with the Court and serve on such Lender Professional an objection (the "Fee Objection") limited to the issue of reasonableness of such fees and expenses. The Debtor shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been filed, and shall promptly pay such fees, costs and expenses that are subject to a Fee Objection upon resolution of such Fee Objection by the Court.

23. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or

incidental beneficiary. In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Credit Agreement, the DIP Lender shall not (a) be deemed to be in control of the operations of the Debtor, or (b) owe any fiduciary duty to the Debtor or its creditors, shareholders or estate.

24.    ~~The Prepetition Lender shall not be required to file a proof of claim in the Chapter 11 Case on account of the Prepetition Obligation~~s.

25.    The Final Hearing to consider entry of the Final Order is scheduled for April 21, 2014 at 11:00 a.m. (Eastern Time) before this Court.

26.    On or before March 10, 2014, the Debtor shall serve by United States mail, first-class postage prepaid (such service constituting adequate notice of the Final Hearing) (a) notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice") and (b) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing, to any other party that has filed a request for notices with this Court, to any Statutory Committee, if the same shall have been appointed, or counsel to any such committee, and to all secured creditors, including taxing authorities who may hold secured claims. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of this Court no later than April 14, 2014, which objections shall be served upon (a) counsel to the Debtor, (i) Latham & Watkins LLP, 885 Third Avenue, New York, NY 10022, Attn: D. J. Baker, djbaker@lw.com, and (ii) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: Mark D. Collins, collins@rlf.com; (b) counsel to the DIP Lender and the Prepetition Lender, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: James L. Patton,

DC\3121453.27RLF1 9994063v.1

jpatton@ycst.com; (c) counsel to certain holders of the Debtor's convertible notes who have entered into a plan support agreement with the Debtor, Akin Gump Strauss, Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036-6745, Attn: Michael Stamer, mstamer@akingump.com; 1333 New Hampshire Ave. N.W. Washington, D.C. 20036, Attn: James Savin, jsavin@akingump.com, and (ii) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899, Attn: David Stratton, strattond@pepperlaw.com; (d) counsel to the Debtor's preferred stockholders, (i) Baker Botts, The Warner, 1299 Pennsylvania Ave., NW, Washington, D.C., 20004-2400, Attn: Michael A. Gold, michael.gold@bakerbotts.com, and (ii) Morrison Foerster, 1290 Avenue of the Americas, New York, NY 10104-0050, Attn: Brett H. Miller, brettmiller@mofo.com; (e) counsel to the DOE, The United States Department of Justice, Ben Franklin Station, P.O. Box 875, Washington, DC 20044, Attn: Tracy J. Whitaker, tracy.whitaker@usdoj.com, (f) counsel to any Statutory Committee; and (g) the Office of the United States Trustee for the District of Delaware, ~~in each case to allow actual receipt of the objection no later than ____, 2014 at 4:00 p.m. (Eastern Time)~~.

27.    Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3) 6004(h), 7062 or otherwise, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

28.    The terms of this Interim Order shall be binding (a) upon any trustee appointed in the Chapter 11 Case or (b) in any Subsequent Case.

29. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: March 6, 2014
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE